Good afternoon, Your Honors. May it please the Court, my name is Timothy Wickburn. I represent the petitioner Nassuma Jabateh. We ask the Court to vacate the decision of the Board of Immigration Appeals that ordered his removal, and instead grant him relief under the Convention Against Torture or Withholding of Removal, and the alternative to remand the case to the agency for, with instructions to consider applications for relief on the merits and the exercise of discretion of adjustment of status and political asylum and related relief. The Board erred in four key ways, two of which I think are particularly important, and both of them are errors of law. First of all, they wrongly held that the petitioner was subject to the so-called material support bar for providing material support to a terrorist organization. That decision was an error of law, and also to the extent that it's mixed law, in fact, it also constituted an abuse of discretion. Secondly, the Board also wrongly held, and erred as a matter of law, that the immigration judge did not have exclusive jurisdiction in this case to hear an adjustment of status application filed by Mr. Jabateh under the so-called Section 13, and there was a clear violation of the plain language of the regulations involved. The other errors, of course, relate to the denial of asylum and also to an adverse credibility finding that was not supported by the record. When it comes to the material support bar, the Immigration and Nationality Act has a provision that if someone has provided material support to terrorists or terrorist organizations, that they would be barred from certain benefits, in this case political asylum or admissibility under the Act. But it's broken down into several components, and it depends on what kind of to make it laser-focused for the Court. This is a Tier 3 group that is talked about, the Liberians United for Reconciliation and Democracy, or LIRD, which was headed by a man named Sekou Kane, C-O-N-N-E-E-H. As part of the history of this case, Mr. Jabateh, who spoke French, was used, according to the immigration judge's findings specifically, sporadically. He was not hired. He was not a member of the organization. He did not provide any assistance in anything having to do with any of the aims of the organization, but instead, sporadically, and occasionally over a three-month time period, provided personal interpretation for doctor visits and social calls. The government would like to say that this is an activity that would trigger the material support bar, but if the word material is to have any meaning in the Act, there has to be an element of materiality. How significant is the assistance? And the government's case seems to depend solely upon Seventh Circuit case law and an illusion in a U.S. Supreme Court case that it doesn't necessarily have to be for a terrorist purpose or for a material purpose. However, that begs the question, and the material question in this case is, is the support material at all? And then, if so, according to the statute and according to Converse's folder, 766 F3-689, then did Mr. Jabateh know or reasonably should have known that it was material support? So to commit an act that the actor knows or reasonably should know affords material support, and then it includes a list of things. This is what the statute says, 8 U.S.C. 1182 A.3.B., small 4, large 6. It's an enormous statute. But first, did the actor know or reasonably should have known that the action affords material support? And it lists some examples. It's not intended to be conclusive. And then, if there is a finding that that happened, then the alien has the burden to show that they didn't know that the organization or shouldn't have known that the organization was a terrorist organization. In this case, we're not arguing about whether he knew or should have known. Let us assume that he knew or should have known. The question here is, is providing interpretation for a doctor's visit or two or three, considering sufficient material support for a terrorist. One of the items in the statutory list does say communications, but there has to be an element of significance here. And that's something that both Kahn v. Holder acknowledges and N. Ray S. K., the BIA case, 23 INN decision 936, which was cited by the immigration judge. He actually had a very good discussion of this. If the government's position were to hold in any communication of any kind to anyone affiliated with a terrorist organization, if we consider material support to terrorism and constitute terrorist activity, then, Your Honor, if a few years back if Osama bin Laden were to walk up to Your Honor and say, hey, I'd like you to be a part of my terrorist organization. And you said, no, Osama bin Laden, I will not be a part of your terrorist organization. You have communicated with him. You have now, according to the government, you have now provided material support for a terrorist organization. Such a conclusion, of course, is ludicrous. So somewhere between that activity and the activity in this case, we have to decide whether providing nominal interpretation services for a doctor's visit and social calls constitutes that. There's no question in the record that Mr. Javate was not a member of the organization. He did nothing to further its aims. He did provide, again, he was not employed. He provided interpretation services. Because the board found the material support bar was triggered, then Mr. Javate would not be eligible for political asylum or withholding or withholding of removal under the Convention Against Torture or even adjustment of status, which is another one of our arguments. What the board did instead is it made, it errs a matter of law because either this is a question of law as to what constitutes material support, and they, of course, they got it wrong. This is a ludicrous level of activity. Or if they considered it a question of fact as the government wishes to. The standard of review for the Board of Immigration Appeals for an immigration judge is to review findings of fact and credibility under a clearly erroneous standard. The board did not engage in any analysis of whether the IJ's finding of facts was clearly erroneous, but instead starts to pick apart the findings of fact and try to find new facts that will support its preconceived notion that there was material support. So in the BIA's decision, they make a comment that the activities of interpretation, etc., they provide, they create a circumstance where the bar may apply. They even say may apply. And then they ask, then they hypothetically switch the burden of proof to Mr. Javate to show by clear and convincing evidence that the bar doesn't apply. That turns one's head. Their job is to decide if it applies. Mr. Wickmer, could I ask you to address one of the alternative grounds for denying relief, which is the finding that Petitioner failed to show that the danger he faced or believed he faced in Liberia was based on a protected ground? Yes, Your Honor, I'll be happy to do that. His family's still there, right, in Monrovia? Yes, his wife and three children are there. The social group that he articulated, he articulated, and all of this is getting to Your Honor's question. I want to make sure that I do that. Political opinion, social group. He was a Mandingo tribe member. He was Muslim religion. He held a government position. He was the director of the Bureau of National Procurement of the General Services Agency of Liberia. And so his particular social group that he articulated was Mandingo Muslims in government official positions. And the alternative imputed political opinion because Mandingo Muslims historically have been underrepresented in government. I know it's legally available, but the immigration judge found it not proven with respect to the motivation of the riot. And I think the judge erred there because what he did was he found the response to testimony credible, apart from one incident, which doesn't directly relate here. But then he talks about three sort of general incidents that could be because of. There was the threats by telephone, which he decided, yes, there's evidence of causation there, but that doesn't rise to the level of persecution. But straddling those was the burning down of his house and also the burglary of his office. But what the judge didn't do is when the judge discounted, he actually said he wasn't credible on nexus for the other two incidents other than the phone calls. But the phone calls and the nexus for the phone calls are factual occurrences that, yes, don't rise by themselves to persecution necessarily, but they color the determination of whether there was causation, whether there was a nexus on the other two. What was the timing? Could you remind me about the timing of the phone calls, the riot and fire, and then the burglary? Yes, Your Honor. 2003, he returned to Liberia, appointed to the government office, began receiving threats. Then sometime in 2004, I think October 29, a mob, again, burned down his house. And there's a lot behind that. We briefed issues of motivation there, but it's a lot of unpacking. And then finally, shortly after that, his office was ransacked and burglarized. So it did occur at most within a year of the threats, and the respondent used his position as a government official to flee to the United States. So we do think that those three things taken in concert, Your Honor, do speak to on account of and causation, and that one element of them was thrown out merely because that in itself didn't relate to persecution, and it wasn't rising to the level of persecution, but it does go to the reasons why. I don't know if Your Honors are... I would like to speak to the issue of adjustment of status for Section 13. The plain language of the regulation, it couldn't be any clearer. Well, there is broad language in one regulation. Yes, Your Honor. How does it make any sense, though, to apply Section 13 to enable every immigration judge in the country to grant one of these 50 adjustments per year that certainly sound to me like they ought to be matters of national policy run through the State Department? There is consultation done with a government agency, Your Honor, but the numerical limit is done the same way it's done with withholding or other things, which is there's a numerical limit if it's not available given your case is either continued or brought back, but... Can you direct us to any prior examples of a Section 13 adjustment of status by an immigration judge? There is no direct precedent on it, but there is persuasive case law at the District Court of D.C. That's the Maloof case where... That was handled on a pro se basis without much briefing, right? It may have been, but all the more reason to side... Well, I take that back, I misspoke. It may have been, but the point of the matter is that the court did make a finding, and the court did make a finding that there was specifically review in front of an immigration judge, and that, of course, goes to his review jurisdiction. That amendment was made in 2006. I'm sorry, Your Honor? The amendment, the change or drop that, whatever the restricting part of it, was made in 2006? Yes, and I think far from damaging our case, I think it makes our case. The Congress knows how, and the agency knows how to make changes in the law when it's required. There is a case in the Seventh Circuit, ironically, it's Pellivan-Seda versus Mukasey. I don't have the citation handy, but I was just thinking of it as I was thinking of the argument. What's the name of it? Seda, C-E-T-A versus Mukasey. I can submit a Rule 28J letter, Your Honor. It just came to me when I was prepping it because this question of arriving aliens, because only arriving aliens are excluded from the general clear language of the reg that says any adjustment of status. It doesn't say under 245. It doesn't say any section. It says any adjustment of status other than arriving aliens. Before that language was done, before that amendment was made, Your Honor, this court ruled that according to the plain language of the statute, the immigration judge had to have the ability to file for or to adjudicate the adjustment of status or to pause the case to allow the USCIS to do it. I think it actually doesn't directly bear on this, but it's instructive. In 2006, when they amended the regulation, they could have said other than arriving aliens, section 13, et cetera, et cetera. They didn't do that. Their actions are determined to have meaning. The prior version of the reg specifically mentioned adjustments of status under a particular section. That language was removed. It just says any adjustment of status. I think that argues in your favor. But in response to Judge Hamilton, since 2006, there's been only one that you can think of where they've gone the other way. Right. Well, the one that I'm thinking of is also in a different context. It was evicted in that case, although we find it persuasive. The point is everybody's got to be the first one to try it. These kinds of adjustments are not that common, hence the limitation of 50 people. The language is there. The government has a bunch of wonderful and nice arguments about why you should give deference to some interpretation of the regs and going into history, but you never get to that point. They're not entitled to deference. This is a clear statutory language. It has exclusive jurisdiction to adjudicate any application for adjustment of status that the alien may file. It couldn't be any clearer. And then the Malouf case we cite for the proposition that even if you find somehow that he doesn't have that jurisdiction, that he does have the ability to review it like anything else. Just because the regulations for Section 13 weren't part of the INA, it doesn't matter. The regulations for immigration court procedure and relief are. The other regulations, the 245.3, I'm sorry, I've used all my allotted time. May I finish that thought? Yes, sure. Thank you. The other regulations specific to Section 13 that counsel may refer to, it only really governs the place where you file it. Lots of things that are considered by the immigration judge are filed with the Immigration Service or the USCIS now, and they file in a particular way. It doesn't speak anything to jurisdiction, and it can be complied with without violating the 1245.2. Thank you very much. Thank you, counsel. May it please the Court. Good afternoon, Your Honors. Daniel Smuller on behalf of the United States Attorney General. In this immigration case, substantial evidence supports the Board's determination that Gervais failed to prove his asylum claim on the merits. Therefore, the Court need not even address the issue as to the material support bar, which is defensible as well. With respect to Mr. Gervais' Section 13 application, it is plain that no regulation gives either the immigration judge or the Board authority to handle these or to adjudicate these Section 13 applications. And in fact, the regulation that applies here, 8 CFR 245.3, which applies to the Department of Homeland Security, it's corollary at 8 CFR 1245.3, demonstrates that the application goes to the district director at CIS and then any appeal is to the USCIS Administrative Appeals Office. There is no authority for the Board or the immigration judge to adjudicate those cases. Why would Congress eliminate that language? I'm sorry, Your Honor? Why would Congress eliminate the restrictive language? Congress would eliminate which restrictive language? I apologize, Your Honor. In the jurisdiction under Section 13. Yes. 2006 amendment broadened the language to any adjustment. That, Your Honor, is a regulatory adjustment under 8 CFR 245.3. So that wasn't a congressional issue. That was, in fact, DHS. And that. Why did it get changed? That the change was pertaining to adjustment of status under INA 245, Section 245. That's 8 USC 1255 in the United States Code. Okay, that language pertains specifically to the vast majority of adjustment of status applications to lawful permanent residents that is adjudicated and that nobody disputes that immigration judges do have jurisdiction to adjudicate. INA, excuse me, Section 13 falls outside of the Immigration and Nationality Act. And the regulation, again, is a 245.3 and not a 245.2. That is a crucial distinction here. This is a different kettle of fish. It is not intended to apply to INA 245 applications. And, in fact, it does not apply to INA 245 applications. Isn't it kind of just a special Cold War provision to deal with defecting diplomats? Yes, Your Honor. We did get into some of the congressional history. Senator Kennedy did mention exactly that. It was pertaining to communist uprisings. This was Senator John Kennedy in 1957. Yes, in 1957. If I could return for a moment to the asylum application, the substantial evidence readily supports the immigration judges and the board's denial on the merits of Mr. Jibhate's claim. Now, in his brief, Jibhate deals only with the incidents involving the communal rioting in the late October 2004 in Monrovia in which his house was destroyed. And Mr. Jibhate, in the immigration court, submitted a newspaper article in which he himself is quoted as saying, the only thing I can say is that those who did this to me did not do so on religious grounds. So we can take religious grounds right off the table. Mr. Jibhate himself refuted it much more closely in time in when he was not applying for asylum. He further described in that article that it was done by, quote, evildoers, suggesting that this was, as the immigration judge found and as the board determined, that this was mass rioting and people just took advantage. And substantial evidence supports that. And indeed, here. We know who evildoers are, don't we? Well, we certainly did if we don't still. In any event, Your Honor, page 740 of the record really shows that there was no past persecution. With respect to the determination that there is no, he has no well-founded fear of future persecution, I cite Your Honors to page 407 of the administrative record, a State Department report showing that there are currently, or at least when the report was submitted, there are members of the judiciary, the executive, and the legislature in the Liberian government who are Mandingo Muslims. So the well-founded theory is supported by substantial evidence as well. Because that asylum denial is supported by substantial evidence, the court need not address the alternate material support determination. If Your Honors are interested, I can certainly go into that and explain why. I'm troubled by it, frankly. And I guess let's start with whether, for example, if Mr. Conway had gone to a doctor, is the doctor providing material support for terrorism by treating a person who's sick? Your Honor, I'm going to answer that question, but if I could step back and show you what the Board did with respect to the law, and you did it correctly. Under the regulations, the material support bar applies. What happens is that the applicant for here asylum has the burden of proving his eligibility for relief. And then the regulation is clear. If the evidence indicates that the person is described in the terrorism bars, the petitioner, the applicant, also has the burden to prove by preponderance of the evidence that the law does not apply. Here, Your Honor... And the immigration judge was satisfied. Yes. And so if you could get back to the hypothetical, I'd be grateful. The hypothetical, I will say that I don't know the answer to that question without more facts, okay? Here, theoretically, there is... Doctors in a small town in Africa... Yes. He knows that these exiled folks from Liberia are nearby and that they are engaging in terrorist activities. And one of these human beings is gravely ill and comes to the doctor for treatment. Must he say no at the risk of being forever barred from the United States? The answer to that lies in the exemption provision at 1182 D3B, and the Secretary of Homeland Security has applied an exemption to the very scenario that you described, Your Honor. So the answer is he would theoretically be barred, that doctor would be, but he may apply for a discretionary exemption from the Department of Homeland Security in consultation with the Department of State. By that time, of course, the person is dead. Excuse me, Your Honor? And Judge Amos' hypothetical, by that time, the person has died, it can't be seen. Your Honor, the doctor could treat them at risk, certainly that he would not get a discretionary exemption. Has the board adopted this view? I mean, this case comes pretty close to it, but... Again, Your Honor, I'm not sure this case does come so close because it's really a burden. He provided detailed testimony on these points. The immigration judge believed him and said that's good enough. The board described it as somewhat vague. Sometimes I was paid, sometimes I was not. There's a real problem, though, with the board deciding, I mean, this shifting of the burden of proof to get around the standard of review is an interesting finesse of the issue. But this is a pretty troubling conclusion, as applied at least to the efforts to see a doctor. Again, with respect to the efforts to see a doctor, that is different from this case, as I understand it. I'm sorry, are we at your hypothetical or are we at Mr. Javate's case? He needs to be able to... Mr. Javate needs to... Mr. Conmay needed help in communicating with the doctor. Yes, and he needed apparently some help dealing with unclear social events, and that wasn't clear as to whether that's going toward recruitment or going toward how is your morning, and that is where Mr. Javate failed to satisfy his burden of proof. So are you disavowing the notion that translation for a doctor's visit could amount to material support of terrorism? I am not disavowing that, Your Honor. Okay. It could be. The law is extremely... It's very troubling. I appreciate that, Your Honor, and that I believe is why Congress has inserted in 1182 D3B, the discretionary waiver, understanding just how broad the statute that they passed is and why the Secretary of Homeland Security has in fact provided a specific exemption for medical purposes. And that is a way to come to a, what I think Your Honor would agree with, is a more so that in fact that physician would not be necessarily barred from the United States forever. Here, however, Your Honor, this is an issue where as the board determined, Mr. Javate simply failed to satisfy his burden of proving by a preponderance of the evidence that the material support does not apply to him. He failed to offer sufficient specifics. Right now, the evidence indicated that it may apply. That's right under the regulation. And Mr. Javate failed to show, prove by preponderance of the evidence that although it looks like it may apply, in fact it does not. He simply did not give us enough, or excuse me, did not give the board enough evidence to get that preponderance of the evidence standard. With respect to, Your Honor, again, with respect to asylum, I think that the court need not address the material support bar issue. I can go solely on the fact that substantial evidence supports the merits denial. And with respect to section 13, if there are no further questions as to that and how that applies, I will submit on my brief and ask the court to affirm the board's decision. Thank you. Thank you. You can have one minute. With respect, thank you. The court does need to reach this material support issue because it's also relevant to the adjustment of status issue. It would bar him from just adjustment of status as well. The IJA's discussion of the de minimis elements of this is very good in his decision, and the BIA just clearly chose to ignore it instead of saying, under the clearly erroneous standard, attacking his foundations. They do this finesse trick, as Your Honor so rightly pointed out. Why do we have to reach that if there's no jurisdiction to consider the section 13 claim? We maintain there is jurisdiction. That's the linkage, okay. According to petitioner's argument, of course. Yeah, okay, yeah, yeah. And then finally, the exception that counsel speaks of would not help someone in my client's position. He provided no medical help, and he's not a significant enough person to warrant attention from the Secretary of State. Thank you, Your Honor. Thank you very much. Thanks to both counsel. The case is taken under advisement in the court of...